STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, AP-PELLEE, V. MITCHELL IRRIGATION DISTRICT, APPELLANT: FARMERS IRRIGATION DISTRICT, INTERVENER, APPELLEE.

FILED SEPTEMBER 20, 1935. No. 29522.

*Morrow & Morrow* and *James A. Greenwood,* for appellant.

*William H. Wright, Attorney General, C. G. Perry* and *Neighbors & Coulter, contra.*

Heard before ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and BLACKLEDGE, District Judge.

GOOD, J.

In 1931, on request of the governor, the attorney general instituted this action, to compel defendant to comply with the laws of the state of Nebraska applicable to irrigation districts in this state, and to enjoin defendant from using any water from the North Platte river for irrigation purposes until it complied with such laws, and for other equitable relief. Plaintiff alleged that defendant has

hitherto failed and refused to comply with any of the laws of the state of Nebraska regulating the use of water from Nebraska streams for purposes of irrigation in Nebraska.

The Farmers Irrigation District, by leave of court, intervened and alleged that it had an appropriation of water from the North Platte river to the extent of 1,142 6/7 cubic feet per second for irrigation purposes, which appropriation was prior to any appropriation by defendant; alleged that defendant was appropriating and using water to such an extent that it deprived intervener of the amount of water to which it was lawfully entitled under its prior appropriation; and prayed that the respective priorities of appropriation of defendant and intervener be ascertained and determined, together with the extent of the appropriation by each.

Defendant answered plaintiff's petition, admitting that it had appropriated and was using water from the North Platte river for irrigation purposes on lands wholly in Nebraska; that its headgate and place of diversion of water from the river was in Wyoming, under an appropriation granted by that state; admitted that it had failed and refused to comply with the demands of the Nebraska state officials to comply with the regulations and laws of Nebraska, and asserted that it was not subject to such regulation, because its headgates and appropriation were in the state of Wyoming; and claimed that it was not subject to the jurisdiction of the state of Nebraska. Defendant also answered the petition of intervener, admitting that intervener had an appropriation of water, prior to that of defendant, to the extent of 28 cubic feet per second, and asserted that defendant's appropriation was prior in time to that of intervener, except to the extent of 28 cubic feet per second. There are other allegations which will be considered in the course of this opinion. Replies were filed by the state of Nebraska and by intervener. The cause was tried to the court which entered two decrees, one in the action between the state and defendant, finding generally in favor of the state; the other between defendant and

intervener, finding generally in favor of intervener, and that it had an appropriation of water, prior to that of defendant, to the extent of 905 cubic feet per second.

A general survey of the record discloses that defendant has an appropriation of water from the North Platte river for irrigation purposes, granted by the state of Wyoming, to the extent of 193.15 cubic feet per second, dating from June 20, 1890, and that its right was secured from the state of Wyoming by defendant's predecessor in title. The present defendant is an irrigation district, organized under the laws of Nebraska. Its principal place of business and residence of its officers are in Nebraska, and the lands which it irrigates are wholly within this state. Defendant has failed and refused to install in the state of Nebraska any measuring device, by which the amount of water it uses for irrigation purposes in this state may be measured. It is conceded that defendant has not complied with the laws of Nebraska regulating the waters of Nebraska streams for irrigation purposes, and regulating irrigation districts, and that it has refused to comply with the orders and directions made by Nebraska officials charged with administering the irrigation laws of the state. Intervener is also a Nebraska irrigation district, claiming an appropriation of water from the North Platte river in the state of Nebraska of 1,142 6/7 cubic feet per second, with a priority dating from September 16, 1887, which was acquired by one of its predecessors in title.

The first irrigation laws in this state were enacted by the legislature in 1889. In 1895, a comprehensive irrigation code was enacted by the legislature which, as amended from time to time, appears as chapter 46, Compiled Statutes of Nebraska for 1929. Reference to the various sections of that code will be by number of section only, and, where other sections than those in the irrigation code are referred to, the proper designation of the chapter will be made.

Section 501 declares that water for the purpose of irri-

gation in this state is a natural want. Section 502 provides that the water of every natural stream not previously appropriated within the state of Nebraska is declared to be the property of the public and dedicated to the use of the people of the state, subject to appropriation as provided by statute. Section 503 provides, as between appropriators, the one first in time is first in right. The irrigation code provides for the policing of streams and the enforcement of laws governing appropriation of water and rights of priority, and that appropriations should be limited to a beneficial use, and places restrictions upon the use of water, limiting each appropriation, as against other appropriators, to the amount of water that he may beneficially use. Penalties are provided for taking water from any stream through any ditch or canal to any land for irrigation, or for allowing the same to be used on any land or lands without authority from the department of public works. Section 615 requires an appropriator of water for irrigation purposes to file acreage reports, and to install a recording gauge, of a design approved by the department of public works, to record the amount of water used, and provides that the department of public works shall not furnish any water to be delivered to or used by or through any ditch, reservoir or other contrivance for the use or appropriation of water until the provisions have been complied with, and that the department may prevent, by the construction of bars or dams, such delivery or use. Other sections provide for the creation of water districts within the state and the appointment of superintendents to regulate the use of water for irrigation purposes within the several districts, and in these sections provision is made for the forfeiture of appropriation and for determination and adjudication of priorities, and a comprehensive plan is provided for the proper administration of water for irrigation within the state. Throughout the Code an affirmative duty is imposed upon the executive branch of the state government to regulate the use of water for irrigation purposes.

Defendant complains of the refusal of the trial court to make special findings of fact and separate conclusions of law. It appears that the cause was finally submitted to the court in October, 1934. November 9, 1934, the court filed an opinion, giving its views with reference to the rights of the respective parties to the action, but decrees at that time were not formulated to carry into effect the announcement made by the court. Thereafter defendant made its request for special findings of fact and separate conclusions of law. On December 12, 1934, a hearing was held as to the form of the decrees to be entered, pertinent to the findings that the court had theretofore made and stated in its opinion. The trial court refused to make further findings of fact or separate conclusions of law.

Section 20-1127, Comp. St. 1929, reads: "Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its finding, except, generally, for the plaintiff or defendant, unless one of the parties request it, with a view of excepting to the decision of the court upon the questions of law involved in the trial; in which case the court shall state in writing the conclusions of fact found separately from the conclusions of law."

In *Ross v. Barker,* 58 Neb. 402, it was held: "The request for a separate statement of conclusions of fact and of law in the trial of a cause to a court without a jury, to render a compliance therewith compulsory, must be made not later than at the final submission of the cause." In the instant case, the cause had been tried; the case submitted to the court, and it had rendered an opinion therein, in which it stated *its* findings and conclusions as to the rights of the parties prior to any request for special findings of fact and conclusions of law. We think the request for special findings in the instant case came too late to require compliance therewith.

Defendant contends that the state of Nebraska has no pecuniary interest in the outcome of this action, is not the real party in interest, and has no right to maintain the action. It asserts that the action is, in fact, on behalf of

other irrigation districts, claiming appropriations prior to those of defendant, and that these are the real parties in interest and could maintain any action necessary for the protection of their rights. Under the facts disclosed, we think it cannot be seriously questioned that the state, even though it has no pecuniary interest in the institution of this action, has a right and a duty to protect the interests of water users, and that this was sufficient justification to authorize the state to bring and maintain this action.

In *State v. Pacific Express Co.*, 80 Neb. 823, it was held: "The attorney general may, on behalf of the state, maintain an action in equity to enjoin common carriers whose rates are fixed by law from violating the terms of the statutes and exacting unlawful and excessive rates and charges." In that case the action was against the express company to enjoin it from violating the provisions of the statute and exacting unlawful rates. It was therein held: "A wrong of a nature which affects the rights and interests of people living in almost every city, town and village in the state, as well as persons living in the country, when committed by a public service corporation, is a public wrong. An action to restrain such a wrong by the state is within the jurisdiction of this court." In the opinion it was said (p. 828) : "But it is contended that the state is not properly a party in this case, and it is argued that no suit can be instituted by the state in the exercise of its constitutional powers or 'sovereign capacity,' except such suit is expressly provided for by statute; that the act in question has by its terms imposed upon the executive department the duty of its enforcement, and that it is therefore beyond the power of the attorney general to shift the burden of executing the law from the executive to the judicial department; that section 6 of the act provides: 'The Nebraska state railway commission, and if there be no commission, then the governor with the assistance of the attorney general, are hereby empowered to enforce the provisions of this act'—and therefore that the railway commission is the only body vested with authority to enforce the provi-

sions of the act. * * * The railway commission, if it seeks to enforce the law, must travel the same road as any private citizen—appeal to the courts for relief, or for the punishment of the carrier who violates the law."

There are many users of water for irrigation purposes in the state of Nebraska. It seems clear that the state has the right, by action, to enforce compliance with laws that will protect the rights of all users of water for irrigation purposes within the state. Other authorities, holding to a like tenor, are: *Attorney General v. Jamaica Pond Aqueduct Corporation*, 133 Mass. 361; *Stockman v. Leddy*, 55 Colo. 24. Similar rulings have been made by the federal courts. *In re Debs*, 158 U. S. 564; *United States v. San Jacinto Tin Co.*, 125 U. S. 273; *United States v. American Bell Telephone Co.*, 128 U. S. 315.

Defendant argues that the attorney general is without authority to institute and carry on this action. We think the contention is unfounded. Section 84-208, Comp. St. 1929, reads: "It shall be the duty of the attorney general of the state to commence, prosecute and defend any and all actions affecting the rights of Nebraska water-users in interstate streams as against appropriators in any other state and to take such steps as in his judgment are required to protect any. and all interests of appropriators of water within this state in such cases." This section of the statute alone, we think, is sufficient to confer authority on the attorney general to institute this action. However, section 84-205, Comp. St. 1929, provides: "The duties of the attorney general shall be: * * * 4. At the request of the governor, the head of any executive department, * * * to prosecute or defend for the state all actions and proceedings, civil or criminal, relating to any matter connected with either of their departments." In the instant case, the action was commenced by the attorney general at the request of the governor and the department of public works. The sections quoted confer ample authority for commencement of the action by the attorney general.

Defendant also contends that, since its appropriation of

water from the North Platte river was acquired by grant from the state of Wyoming and its diversion works, whereby water is taken from the North Platte river, are located in Wyoming, it is not subject to the jurisdiction of the state of Nebraska, and that the state has no power to regulate or control its use of the water as an irrigation district, or to control or administer the water which it thus takes from the North Platte river.

We think the contention is unsound. Defendant is a corporation organized under the laws of Nebraska. Its principal place of business, the residence of its officers, the lands for which it furnishes water for irrigation purposes are all in the state of Nebraska. It uses the laws of the state of Nebraska to perfect its organization, to collect rentals, and to protect its rights in the distribution of waters to the various landowners. There can be, therefore, no question that, by residence, the corporation is subject to the jurisdiction of the state of Nebraska. The fact that it takes water from the North Platte river just outside of the state of Nebraska and conducts it into the state does not justify the assumption that it is not subject to the control of the state as soon as the water is brought within its borders. It is the duty of the state, under the Constitution and laws, to see that the waters of the streams used for irrigation purposes are not wasted; that the prior appropriators shall be protected as against subsequent appropriators, and in this instance it appears that there are a number of prior appropriators whose rights are superior to those of the defendant in the use of the waters of the North Platte river. These appropriators are all in Nebraska. Clearly, the state of Wyoming would have no authority to administer the waters, after they come into this state, and control their use. If the contention of defendant is sound, it would leave the defendant in absolute control of the waters which it takes from the river, without regard to the rights of prior appropriators, and no state and no court would have any authority to interfere to compel it to use the waters for a beneficial purpose.

Gas companies and oil companies, having pipe lines carrying gas and oil from other states into Nebraska, are subject to control in this state, in so far as the gas and oil which they bring into the state are concerned, and they are obliged to comply with reasonable regulation by the state. We think, likewise, that defendant, as soon as it brings the water across the line into this state, is subject to regulation by the state, and it should be compelled to comply with any reasonable regulation imposed by authority of the state.

In *Stockman v. Leddy, supra,* the court said (p. 28): "The state has never relinquished its right of ownership and claim to the waters of our natural streams, although it has granted to its citizens, upon prescribed conditions, the right to the use of such waters for beneficial purposes and within its own boundaries. The property right, however, in the natural streams, and the waters flowing therein, has never been renounced or relinquished by the state, and it has at all times asserted not only its right of ownership, but the unrestrained right, within its own boundaries, to distribute its waters to those who have, under its authority, acquired, by perfected appropriation, the right to their use."

In *Willey v. Decker,* 11 Wyo. 496, it was held:

"As between parties diverting water from the same stream in this state and using the same for irrigating lands within this state, the district court has jurisdiction, not only to restrain the unlawful diversion of water by one to the injury of the other, but to determine their relative rights to the use of the water. * * *

"Where a stream has its source in another state, and flows from that state into this state, the district court of the proper county, having acquired jurisdiction over the parties, has jurisdiction to enjoin defendants from diverting the waters of such stream at a point in the other state to such an extent as to deprive plaintiffs whose lands are situated in this state of the water for their irrigation, to which plaintiffs are entitled by priority of appropriation."

Since the institution of this action, the state of Nebraska has commenced an action in the United States supreme court against the state of Wyoming, wherein the state of Nebraska asserts that the state of Wyoming is diverting and using waters of the North Platte river for appropriations junior to many appropriations in the state of Nebraska, and seeks a determination of the amount of waters of said river which the state of Wyoming is entitled to divert and the amount of appropriations of waters of said river which should be permitted to run into Nebraska to supply the needs of prior appropriators in this state. Defendant contends that the pendency of that action is sufficient to oust the courts of Nebraska of jurisdiction to determine the issues in the instant case. No authorities are cited to sustain that view.

The principle is well established that, where different courts may have jurisdiction of a cause of action, the one which has first acquired jurisdiction of the cause will retain it to a final conclusion. This action was begun three years prior to the action by the state of Nebraska against the state of Wyoming. Moreover, the parties to that action are not the same as the parties to this action. We are of the opinion that the pendency of that action does not affect the jurisdiction of the courts of this state in the instant case.

We will next consider the contentions arising between the defendant and the cross-petitioner Farmers Irrigation District. At the outset the defendant strenuously objected to the right of cross-petitioner to intervene in the action. At another point in its brief defendant insists that, if the action was begun by the state for the purpose of determining relative priorities of appropriation, then all alleged prior appropriators in Nebraska should have been made parties defendant. If, as it contends, all alleged prior appropriators in Nebraska should have been made parties defendant, we fail to see any reason why defendant should object to the intervention and filing of the cross-petition by intervener. The authorities cited to sustain defendant's

contention do not appear to be in point. Moreover, intervener has a direct interest in the controversy, since the defendant attacked the prior decisions of this court and of the state board of irrigation, which had awarded to intervener its appropriation and fixed its priority at a date previous to the appropriation by defendant. Intervener, therefore, had a direct interest and was entitled to intervene.

The state board of irrigation in Nebraska in 1897 entered an order, determining that cross-petitioner had a valid appropriation for 1,142 6/7 cubic feet per second, with a priority date of September 16, 1887. The validity of that adjudication was before this court in the case of *Farmers Canal Co. v. Frank*, 72 Neb. 136. It was therein held: "The powers of the state board of irrigation exercised under section 16, art. II, ch. 93a of the irrigation act of 1895, are quasi judicial in their nature, and an adjudication by it of a right of priority of appropriation of water made before taking effect of the act of 1895, after proper notice, is final, unless appealed from, and cannot be collaterally attacked." The Farmers Canal Company was a predecessor in title to the Farmers Irrigation District, the cross-petitioner in the instant case. In the opinion in that case it was said (p. 145): "The first question which it is necessary to determine under these issues, is as to the status of the Farmers Canal Company and Roberts Walker with reference to the adjudication of priority of appropriation made by the state board of irrigation on the 9th day of January, 1897. This will involve a construction of certain sections of the act of 1895, * * * being the general law relating to irrigation, and, in order to have a proper consideration of the meaning and intent of the legislature in the enactment of such provisions, it will be necessary to consider the whole course of legislation in this state upon this subject, and the construction given to similar statutory and constitutional provisions by the courts of other states and territories." Then follows a statement, giving a summary of considerable of the legislation on irrigation and

the recital of a decision and order entered by the state board of irrigation. The opinion then recites that the state board had jurisdiction to hear and determine, and that, no appeal having been taken from its determination, its order allowing the appropriation is final and cannot be collaterally attacked. The next question determined was whether the Farmers Canal Company, predecessor of the Farmers Irrigation Company, had lost its right to the appropriation by abandonment, and the court held that its appropriation had not been lost by abandonment. It is true that the defendant was not a party to that action. However, in a subsequent case, decided by this court (*Enterprise Irrigation District v. Tri-State Land Co.*, 92 Neb. 121), the defendant was a party to the action. In that action the priorities and extent of the appropriation of the cross-petitioner and other parties, including the defendant, were directly involved. This court again held that the appropriation of the cross-petitioner had been adjudicated by the state board of irrigation and that it was entitled to an appropriation of 1,142 6/7 cubic feet per second, with a priority date from September 16, 1887, and again held that the cross-petitioner had not lost its right to the appropriation by abandonment or nonuser.

Defendant contends, however, that it was not a party to that decision in the supreme court. The record does not sustain its contention. It was a defendant in the action and made the same claims that it does in the present action, and the adjudication was against it in that action. It filed a cross-appeal in this court and a brief in support thereof, and after decree was entered in this court it filed a motion for a rehearing. When its motion was overruled it carried the case to the United States supreme court, and its contention was there denied. *Enterprise Irrigation District v. Farmers Mutual Canal Co.*, 243 U. S. 157. The court there held that no federal question was involved, and that the defense of estoppel was an independent defense, had merit and, of itself, was sufficient to sustain the decision by this court. We must therefore hold that the

relative priority of the appropriations of cross-petitioner and defendant and the extent thereof have been heretofore fully determined.

In the instant case the trial court found and determined that cross-petitioner's appropriation was valid to the extent of 905 cubic feet per second. Since it has not appealed from this finding, we are not required to determine whether or not its appropriation was valid to the extent, which it claimed, of 1,142 6/7 cubic feet per second. We conclude that cross-petitioner is satisfied with the finding and decision of the trial court in that respect.

It appears that the United States government has established and constructed reservoirs on the North Platte river in Wyoming for the storage of waters, to be released during the irrigation season for the purpose of irrigation, to such irrigators as have applied therefor and secured the right to such release. These reservoirs are known as the Pathfinder and Guernsey reservoirs. It appears that cross-petitioner has acquired from the government the right to a certain quantity of water, to be released to it during the irrigation season from these reservoirs. Defendant contends that, since cross-petitioner has acquired and used water from these reservoirs during the irrigation season, it has not used the amount of water, naturally flowing in the stream, to the extent of its claimed right, and that, therefore, it has abandoned and lost, by nonuser, its right to the natural flow of the stream to the extent that it has used storage water.

The record discloses that, at times during the irrigation season in dry years, there is an insufficient amount of water in the natural flow of the North Platte river to supply cross-petitioner with the amount of water for which its appropriation has been heretofore adjudicated, and cross-petitioner, for the purpose of supplementing this supply, has contracted with the government for a stipulated amount of water, to be released from the reservoirs, above mentioned, during the irrigation season. Its contract with the government for water stored in the reservoirs was

simply a means to supplement its needs in dry seasons. That it may have used less of the natural flow of the stream than its appropriation called for would not amount to an abandonment of its right, nor to a surrender of a portion of its appropriation.

Many other assignments of error by defendant and questions argued by it in its numerous and lengthy briefs have been given consideration, but we deem it unnecessary to further discuss them in this opinion.

The decree of the district court, as between defendant and cross-petitioner, is affirmed, and the decree, as between the state and defendant, is modified so as to require defendant to install measuring devices, headgates and sluicegates in its canal prior to the irrigation season of 1936, instead of in 1935, as provided in the decree, and as so modified the decree, as between the state and defendant, is affirmed.

AFFIRMED AS MODIFIED.