GEORGE W. CONDON COMPANY ET AL., APPELLANTS, V. LOUP RIVER PUBLIC POWER DISTRICT, APPELLEE.

281 N. W. 31

FILED JULY 15, 1938. No. 30278.

*Crofoot, Fraser, Connolly & Stryker* and *Reeder & Reeder,* for appellants.

*C. N. McElfresh* and *August Wagner, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ.

EBERLY, J.

This is an action at law. It was tried upon the second amended petition, which set forth three distinct causes of action alleged to have arisen out of a single construction contract. Issues were joined. A jury was waived and trial had to the court, resulting in a judgment in favor of plaintiffs on their first cause of action for $8,983.75; a judgment in favor of plaintiffs on the second cause of action for $3,000; a judgment in favor of defendant on the third cause of action and a dismissal of the same. Plaintiffs filed their motion for a new trial as to the judgments entered on the second and third causes of action, and from the order of the district court overruling the same have appealed. The defendant also filed its præcipe on cross-appeal, as required by the rules of this court.

Preliminary to the consideration of the merits of these appeals, a question of procedure is presented. There is in the transcript a document entitled "Findings of the Court," subscribed by the trial judge, and filed in the cause. Section 20-1127, Comp. St. 1929, provides (where a jury is waived) :

"Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its finding, except, generally, for the plaintiff or defendant, unless one of the parties request it, with a view of excepting to the decision of the court upon the questions of law involved in the trial; in which case the court shall state in writing the conclusions of fact found separately from the conclusions of law."

We have construed this statute as mandatory, and have held that, upon a trial of a law action to the court without a jury, the court on request shall separately state conclusions of fact and law. *Carl v. Wentz,* 116 Neb. 880, 219 N. W. 390.

But, in the instant case, the record does not disclose that either party requested the trial court to state, in writing, its conclusions of fact found separately from its conclusions of law.

"In the absence of statute it is not the common-law function of a judge in a common-law action, trying a case without a jury, to make special findings of fact." 8 Standard Encyclopedia of Procedure, 994.

Construing the statute as creating and imposing a power that did not exist at common law, it is quite obvious that a "request" by one of the parties is made a prerequisite to its exercise. This situation has been in part recognized by this jurisdiction in the case of *Sheibley v. Dixon County,* 61 Neb. 409, 85 N. W. 399, wherein the rule is announced, viz.: "Error cannot be predicated on the failure of the court to make special findings of fact where none were asked." See, also, *State v. Mitchel Irrigation District,* 129 Neb. 586, 262 N. W. 543.

But, it appears that this court has not passed upon the effect of a "special finding of fact" made by a court with-

out previous request by either party. However, under statutory provisions quite similar, if not identical, with the one we have quoted above, courts of last resort have held that a finding so made is not to be regarded as a valid statutory finding, and may not be considered except as a general finding. *Lesan Advertising Co. v. Castleman,* 265 Mo. 345, 177 S. W. 597; *Anger v. McCorkle,* 253 S. W. (Mo. App.) 72; *Kansas City v. Boyer,* 202 S. W. (Mo.) 1086; *Kelley v. Bell,* 172 Ind. 590, 88 N. E. 58; *Jacobs v. State,* 127 Ind. 77, 26 N. E. 675; *Wallace v. Kirtley,* 98 Ind. 485; *Bake v. Smiley,* 84 Ind. 212.

In support of their third cause of action, plaintiffs state that the work upon which plaintiffs bid was described in the "Proposal" for work, as follows:

| "Para-graph No. | Item No. | Schedule of estimated quantities for canvas-ing bids | Unit | Description | Unit price on which payment is to be made | Amount |
|---|---|---|---|---|---|---|
| 3,18 | 1 | 1,200,000 | Cu. Yd. | Earth Exca-vation, Canal | $ .09 | $108,000." |

Further, "That the work (to be) performed under said Item consisted in the main of the excavation of approximately four and one-half miles of canal leading to the Columbus Hydro-Electric Power Station located about two miles north of the city of Columbus, and the excavation of the site of said Power Station and Sub-Station, and the tail-race or discharge canal leading from the Power House site approximately 1,000 feet to the south.

"That the soil, materials, terrain and nature of the work at various points of said canal, Power Station site and tail-race varied materially in character, and required the use of different machinery and methods in the excavation of same.

"That the cost of the excavation varied more than 100 per cent. at various locations in the work.

"That the excavation as originally proposed and described in Item 1 of Schedule VIII of the 'Proposal' or 'Bid Form' prepared by the defendant and its engineers, was not di-

vided by locations or the total yardage involved, to permit a separate bid upon the amount of work at different locations requiring different methods with differing costs, and the plaintiffs in bidding upon said Item were required to determine the total amount of yardage of each class or kind of work, and submit an average bid price, in consideration of the amount of yardage of differing materials and work involved, for all of the excavation contemplated under the Item. * * *

"That the tail-race and discharge canal proposed under the drawings and specifications upon which the plaintiffs' bid or proposal for Item 1 was submitted, was provided to be approximately 773 feet in length and 155 feet in width, and the Power Station for which a site was to be excavated was approximately 48 feet by 164 feet in dimensions.

"That after the execution of the Agreement hereinbefore referred to, being section 'E' of the Contract Documents, the engineers, exercising purported authority under the Contract Documents, changed the drawings and specifications fixing the location of the Power Station to a point approximately 198 feet north from the location as provided for under the original drawings and specifications, and changed the drawings and specifications to provide for a tail-race or discharge canal 192 feet in width, and extensive additional cuts in that vicinity.

"That the changes as above described necessitated the excavation of approximately 198 feet in length of additional tail-race or discharge canal at the north end of same, and an excavation of the site of the Power Station at a point approximately 198 feet north of the point where it was originally located, and extensive additional excavations at that point.

"That the engineers directed the plaintiffs to complete the work in accordance with the changes made in the drawings and specifications, and the plaintiffs completed the work in accordance with same."

Plaintiffs allege that because of the increased quantity and adverse qualities of the soil involved the change oper-

ated to plaintiffs' damage in the sum of $29,000. Plaintiffs, however, were paid at the rate of 9 cents a cubic yard for all additional excavations by them made, which said amount was accepted by them. It is obvious that plaintiffs' rights in the premises are necessarily measured by the terms of their contract, if its provisions were drawn with the instant situation in contemplation of the parties thereto. This contract is specific in its terms and constitutes a bound volume of some 98 pages. The following excerpts therefrom are applicable to the present controversy, viz.:

"All work to be done on the project shall be subject to the following rules and regulations adopted by the Federal Emergency Administrator of Public Works (herein called the 'Administrator') to carry out the purposes and control the administration of Title II of the Act, which rules and regulations shall be incorporated verbatim in all construction contracts for work on the project:"

"Definitions:

"(a)   The Contract Documents consist of Instructions to Bidders, Proposal Form, Engineering Specifications, Schedules, General Conditions, Agreement, Performance Bond, Labor Bond, Qualification Forms for Bidders, and Drawings, including all modifications thereof incorporated in the documents before their execution. These form the Contract."

"The Contract Documents are complementary, and what is called for by any one shall be as binding as if called for by all. The intention of the Documents is to include all labor and materials, equipment and transportation necessary for the proper execution of the work."

"Drawings:

"(a)   *Contract Drawings:* Contract drawings are only general drawings developed to show the character of the work to be performed and are not necessarily accurate as to details thereof.

"(b)   *Detail Drawings and Instructions:* The Engineer shall furnish, with reasonable promptness, additional instructions, by means of drawings or otherwise, necessary

for the proper execution of the work. All such drawings and instructions shall be consistent with the Contract Documents, true developments thereof, and reasonably inferable therefrom.

"(c) *Copies furnished:* Unless otherwise provided in the Contract Documents, the Engineer shall furnish to the Contractor, free of charge, all copies of drawings ,and specifications reasonably necessary for the execution of the work.

"It is understood and agreed that the Contractor has, by careful examination, satisfied himself as to the nature and location of the work, the conformation of the ground, the character, quality and quantity of the materials to be encountered, the character of equipment and facilities needed preliminary to and during the prosecution of the work, the general and local conditions, and all other matters which can in any way affect the work under this Contract. No verbal agreement or conversation with any officer, agent, or employee of the District, either before or after the execution of this Contract, shall affect or modify any of the terms or obligations herein contained."

"Changes in the work:

"The District, without invalidating the Contract, may order extra work or make changes by altering, adding to or deducting from the work, the Contract Sum being adjusted accordingly. All such work shall be executed under the conditions of the original contract except that any claim for extension of time caused thereby shall be adjusted at the time of ordering such change.

"In giving instructions, the Engineer shall have authority to make minor changes in the work not involving extra cost, and not inconsistent with the purposes of the work, but otherwise, except in an emergency endangering life or property, no extra work or change shall be made unless in pursuance of a written order by the Engineer, and no claim for an addition to the Contract Sum shall be valid unless so ordered. All extra work must be approved by the P. W. A. Engineer.

"The value of any such extra work or change shall be determined in one or more of the following ways:

"(a) By estimate and acceptance in a lump sum.

"(b) By unit prices named in the Contract or subsequently agreed upon.

"(c) By cost and percentage or by cost and a fixed fee.

"If none of the above methods is agreed upon, the Contractor, provided he receives an order as above, shall proceed with the work. In such cases and also under case (c) he shall keep and present in such form as the Engineer may direct, a correct amount of the net cost of labor and materials, together with vouchers. In any case, the Engineer shall certify to the amount, including reasonable allowance for overhead and profit, due to the Contractor. Pending final determination of value, payments on account of changes shall be made on the Engineer's estimate."

"Claims for extra cost:

"If the Contractor claims that any instructions by drawings or otherwise involve extra cost under this Contract, he shall give the Engineer written notice thereof within a reasonable time after the receipt of such instructions, and in any event before proceeding to execute the work, except in emergency endangering life or property, and the procedure shall then be as provided for changes in the work. No such claim shall be valid unless so made."

"Article 3. The contract sum:

"The District shall pay the Contractor for the performance of the Contract, subject to additions and deductions provided therein, in current funds, the unit prices and lump sums set forth in the Schedule referred to in Article 1 of this Agreement at the times and in the manner in this Agreement provided.

"Where the quantities originally contemplated are so changed that application of the agreed unit price to the quantity of work performed is shown to create a hardship to the District or the Contractor, there shall be an equitable adjustment of the Contract to prevent such hardship."

"Earth excavation defined:

"All material moved in excavation of canals or in the construction of reservoir dikes or levees shall be classified in payment as earth excavation. * * *

"Borings not guaranteed:

"At intervals in the region of the work, borings have been made. Notes for these test borings and the samples of materials may be examined at the Engineer's office. The District, however, does not guarantee the material shown by the borings or as noted in the test boring records as a true indication of the character of the material that will be encountered. The Contractor by bidding on this work accepts the above information as correct and/or acknowledges the making of such additional borings and investigations as to satisfy himself as to the character of materials."

It is clear that no claim for extra compensation on behalf of plaintiffs was ever made until after the completion of the excavations required by the changes made in the drawings and specifications, to which their petition refers. The defendant district paid for the work on monthly estimates at the rate of 9 cents a cubic yard. The change of location of the power house and the increased dimensions of the tail-race necessitated an increase in the quantity of excavation so that the original estimate of 1,200,000 cubic yards reached a final figure of 1,671,948 cubic yards. But, all were paid for and the money received by plaintiffs on the basis of 9 cents a cubic yard. No extra compensation was asked until after the contract for this excavation in suit was finished and defendant had refused to pay the contractor for the reservoir clearance, which was entirely separate from the present claim.

Plaintiffs predicate their right of recovery upon the basis that the contract agreement between the plaintiffs and defendant, section E of the "contract documents," provides at p. 52, as follows: "Where the quantities originally contemplated are so changed that application of the agreed unit price to the quantity of work performed is shown to create a hardship to the District or the Contractor, there shall be an equitable adjustment of the contract to pre-

vent such hardship." But this provision must be read in the light of others quoted herein. In this case, eleven distinct writings form the contract which here controls. All the provisions we have quoted form equal parts of it. This contract expressly provides that "all work to be done on the project shall be subject to the following rules and regulations," etc. The contract documents are complementary, and "what is called for by any one shall be as binding as if called for by all." These rules are express agreements of the parties, mirror their intentions in entering into this contract, and must be enforced.

The provision plaintiffs rely upon must be construed in connection with the provision as to "Changes in the work," and the provision pertaining to "Claims for extra cost." Certainly we have here presented a demand which grows out of "Changes in the work" as contemplated by the contract, and one clearly embraced within the provisions for "Claims for extra cost." In fact, the claim of plaintiffs is nothing more than an assertion that they have a claim for $29,000, which is a claim for extra cost, which amounts to a hardship under the clause they quote. So construed, the provisions of the contract as an entirety must have been conformed to and carried out by them. Obviously, where extra cost is involved, except in emergency, no extra work or change shall be made unless in pursuance of a written order by the engineer, and no claim for additions to the contract sum shall be valid unless so ordered. No such written order was ever given. In addition, it is expressly provided that no claim such as here presented shall be valid unless the contractor gives the engineer written notice thereof before the performance of the work, and no such notice in writing was ever given. In fact, none of these provisions was complied with by plaintiffs, and the terms of the contract upon which they sue, under these circumstances, forbid recovery by them. In other words, construing the contract in suit as an entirety, and giving proper effect to all the provisions contained therein, there can be no recovery on plaintiffs' third cause of action.

Plaintiffs' second cause of action is for loss of profits occasioned by the fact that defendant withdrew or eliminated item 3 of schedule VIII from the contract and prevented the plaintiffs from performing the work. Item 3 of schedule VIII appears in the contract documents as follows:

| "Paragraph No. | Item No. | Schedule of estimated quantities for canvassing bids | Unit | Description | Unit price on which payment is to be made | Amount |
|---|---|---|---|---|---|---|
| 23 | 3 | 1,200 | acres | Clearing reservoir site | $5.00 | $6,000." |

This item 3 was accompanied by other provisions in the contract, wherein it was agreed, in substance, that the work was to be properly performed consistent with the details therein prescribed. Plaintiffs, in the judgment appealed from, were allowed the sum of $3,000 as their damages. This contract provides for the premises to be cleared, an estimate of the number of acres involved, and provides compensation at the rate of $5 an acre for the area actually cleared. Obviously, for the area where no clearing would be required, no compensation could be claimed. It appears that this construction is in harmony with the common understanding among those engaged in this employment. Erik Floor, a graduate engineer, with 24 years of experience, testifies in part, viz.: "Q. In that work are you familiar and do you know what is commonly understood by contractors and engineers when they read an estimate and plans and specifications such as is given under item three of the contract No. 6 involved in this suit which reads: 'Item No. 3, Schedule of estimated quantities for canvassing bids; unit, 1,200 acres; description, clearing reservoir; unit price on which payment is to be made $5.00; amount $6,000.00' as to whether that means the actual amount cleared or the actual acreage specified? A. It generally always means the actual acreage cleared." This conclusion appears to be in accord with decisions of the courts on this proposition, by whom it is held, under similar

circumstances, that such a contract contemplates payment only for actual acres cleared. See, *Laine v. Kennedy*, 43 N. B. 173; *Myers v. Union Electric Light & Power Co.*, 334 Mo. 622, 66 S. W. (2d) 565; *Wentzel v. Lake Lotawana Development Co.*, 226 Mo. App. 960, 48 S. W. (2d) 185; *McCarthy v. McArthur*, 69 Ark. 313, 63 S. W. 56.

Conceding that there is a conflict of evidence on this point, and a conflict of evidence as to the amount of damages occasioned by defendant's act in violating this term of the contract, still this is not a trial *de novo*, and the findings of the trial court have the force and effect of a jury's verdict where the evidence is in substantial dispute. It is plain, therefore, that if 50 per cent. of the 1,200 acres was all that required clearing, at most the plaintiffs would be able to earn but $3,000 if the contract was performed. On this basis, they were amply compensated by the allowance of $3,000 damages for loss of profits, as made by the trial court.

In view of the fact that the record discloses that no motion for a new trial was filed by the defendant, its cross-appeal entitles it to no relief.

It therefore appears that the judgment entered by the district court is, in all respects, substantially correct, and it is

AFFIRMED.